STATE of Minnesota, Respondent,

v.

Mary FRIBERG, et al., Appellants.

No. C5–87–1703.

Court of Appeals of Minnesota.

March 29, 1988.

Review Granted May 18, 1988.

Hubert H. Humphrey, III, Atty. Gen., Edward P. Starr, St. Paul City Atty., Gerald T. Hendrickson, Chief Prosecutor, Patricia A. Rogin, Asst. City Atty., St. Paul, for respondent.

Barry W. McKee, Stillwater, Mark D. Nyvold, Minneapolis, for appellants.

Heard, considered and decided by NIERENGARTEN, P.J., and SEDGWICK and FORSBERG, JJ.

## OPINION

SEDGWICK, Judge.

This appeal is from an order and judgment denying the appellants' motion for an order dismissing misdemeanor trespass charges. Appellants contend their constitutional right to a speedy trial was denied and that probation restrictions on their picketing activities unconstitutionally infringe on their first amendment rights. We affirm.

## FACTS

On December 23, 1986, approximately thirty-five individuals were protesting and picketing in front of the Planned Parenthood Clinic in St. Paul. Appellants staged a "sit-in" inside the clinic facilities and were arrested and charged with criminal trespass when they refused several requests to leave the private property.

The appellants pleaded not guilty at their January 13, 1987 arraignment. The trial originally was scheduled for May 26, 1987, but was continued to June 22, 1987 because of the large number of cases on the trial calendar at that time. On May 26, 1987, the appellants filed a written demand for a speedy trial. The trial, scheduled for June 22, 1987, did not take place because appellants filed a notice of removal against the judge scheduled to hear their case that day. The trial court stated "[t]here were no other judges available that week to hear the case," and consequently "the matter was continued for a third trial date of August 17, 1987."

Prior to trial, appellants moved to dismiss the trespassing charges contending their right to a speedy trial had been violated. The trial court denied the motion because the appellants' notice of removal was filed when the court was "lacking at least two judges" and was "operating with a skeleton staff of judges," and because the court concluded the appellants had not been prejudiced by the delay. The jury returned a guilty verdict as to all defendants.

The court sentenced each appellant to sixty days in the workhouse, or, in the alternative, probation for one year. The probation conditions required each appellant to pay a $330 fine, remain law abiding for one year, volunteer forty hours to community service programs, and refrain from coming "within 500 feet" of the Planned Parenthood Clinic in St. Paul. Two of the five appellants refused to abide by the probation conditions and were committed to the county workhouse. This court, by order of September 15, 1987, granted the two appellants release pending appeal.

In a post trial motion, appellants moved for an order vacating the judgment contending their right to a speedy trial had been denied and arguing the probation condition prohibiting them from coming within 500 feet of the clinic was unconstitutional and "unduly restrictive." The trial court denied appellant's motion.

## ISSUES

1. Did the trial court err by refusing to dismiss the charges against appellants when the appellants were not tried within sixty days after demanding a speedy trial?

2. Does the probation condition prohibiting appellants from coming within 500 feet of the clinic unconstitutionally restrict appellants' first amendment rights?

## ANALYSIS

### 1. Speedy Trial

Persons accused of crimes are entitled to a speedy trial. See U.S. Const. amend. VI; State v. Jones, 392 N.W.2d 224, 234 (Minn. 1986) ("Through the fourteenth amendment, this right applies in state criminal proceedings."); see also Minn. Const. art. I, § 6. Although the United States Supreme Court has declined to establish a fixed time period within which trials must occur, the Court has indicated that the states "are free to prescribe a reasonable period consistent with constitutional standards." Barker v. Wingo, 407 U.S. 514, 523, 92 S.Ct. 2182, 2188, 33 L.Ed.2d 101 (1972). The Court has adopted a balancing test "in which the conduct of both the prosecution and the defendant are weighed." Id. at 530, 92 S.Ct. at 2192 (footnote omitted).

The *Barker* Court identified four general factors to consider in determining whether an individual has been deprived of his or her right to a speedy trial: (1) the length of delay; (2) the reason for the delay; (3) the individual's assertion of the right; and (4) the prejudice to the accused. *Id.; see State v. Rossbach*, 288 N.W.2d 714, 716 (Minn.1980) (analyzing speedy trial claims under the four factors identified in *Barker*).

Minnesota's rules of criminal procedure establish guidelines for ensuring a speedy trial in misdemeanor cases.

A defendant shall be tried as soon as possible after entry of a not guilty plea. On demand made in writing or orally on the record by the prosecuting attorney or the defendant, the defendant *shall be tried within sixty (60) days from the date of the demand unless good cause is shown by the prosecution or defendant* why he should not be brought to trial within that period.

Minn.R.Crim.P. 6.06 (emphasis added). The sixty-day period prescribed in Rule 6.06 is "presumptive only"; the *Barker* factors "should still be considered." *State v. Curtis*, 393 N.W.2d 10, 12 (Minn.Ct.App. 1986).

### a. Length of delay

The appellants in this case were arrested on December 23, 1986, and pleaded not guilty on January 13, 1987. The pretrial hearing originally scheduled for February 24 was continued to allow the appellants time to obtain counsel. The first trial was set May 26, but was continued because of a crowded court calendar. Appellants demanded a speedy trial on May 26, and the trial was reset for June 22. On that date, appellants filed a notice of removal which required the court to reassign the case and reschedule the trial to August 17, when it was held.

The twenty-three day period between the date of the appellants' trial and the expiration of the sixty-day limit prescribed by Rule 6.06 represents a delay sufficient to trigger further analysis of the other three *Barker* factors. *See Barker,* 407 U.S. at 530-31, 92 S.Ct. at 2191-92.

### b. Reason for the delay

According to the trial court, "it was necessary for the court to reschedule the [May 26] trial date for June 22, 1987" because at the time of the original trial date "there were 150 cases on the trial calendar." However, the trial did not occur on June 22 because, on that day, the appellants filed a notice of removal. According to the trial court, "There were no other judges available that week to hear the case." Consequently, the trial was rescheduled for August 17.

■ Delays caused by overburdened court systems and administrative difficulties should weigh against the government which must assume responsibility for bringing cases to trial. *See Barker,* 407 U.S. at 531, 92 S.Ct. at 2192. "The responsibility for an overburdened judicial system cannot * * * rest with the defendant." *Jones,* 392 N.W.2d at 235.

Although the appellants' trial was delayed because of the trial court's administrative problems, at least part of the delay was due to the appellants' actions. The initial pretrial conference was scheduled one and one-half months after the arraignment. However, the pretrial conference was continued for three weeks because the appellants appeared pro se and wanted to obtain legal counsel. The trial apparently would have occurred on June 22—approximately thirty days after the demand for a speedy trial—if the appellants had not filed a notice of removal on that date which made it necessary for the court to reassign the case and reschedule the trial a second time. The appellants' notice of removal was dated March 13, 1987, but was not filed with the court until June 22 or 23, the day of the rescheduled trial.

The first rescheduled trial date would have occurred within the sixty-day time period prescribed by Rule 6.06 and the appellants would have received a speedy trial within the meaning of the Rule. Since the trial apparently would have occurred in a timely manner but for the appellants' no-

tice of removal which required the court to reschedule the trial a second time, the appellants should bear some of the responsibility for the delay in the trial of their case. *Cf. Rossbach*, 288 N.W.2d at 716 (the appellant was not denied a speedy trial in part because the appellant "was responsible for much of nearly five of the seven month delay").

### c. Assertion of the right

The appellants asserted their demand for a speedy trial in writing on May 26, 1987. *See* Minn.R.Crim.P. 6.06.

### d. Prejudice to the accused

■ An affirmative demonstration of prejudice is not necessary to prove a denial of the constitutional right to a speedy trial. *Moore v. Arizona*, 414 U.S. 25, 26, 94 S.Ct. 188, 189, 38 L.Ed.2d 183 (1973).

> We regard none of the four factors * * * as either a necessary or sufficient condition to the finding of a deprivation of the right of speedy trial. Rather, they are related factors and must be considered together with such other circumstances as may be relevant.

*Barker*, 407 U.S. at 533, 92 S.Ct. at 2193.

> Prejudice is not confined solely to harm to the defense of the case. The court should also consider prejudice from interference with the person's liberty, disruption of employment, financial hardship, strain on friendships and associations, and anxiety and stress to the defendant and the defendant's family.

*State v. Brooke*, 381 N.W.2d 885, 889 (Minn.Ct.App.1986) (citing *Moore*, 414 U.S. at 26–27, 94 S.Ct. at 190).

The trial court concluded the appellants were not unreasonably affected by the court proceedings and trial delays.

> I don't think there has been any prejudice. I realize the anxiety which all of you have been subjected [to] and I know it's not fun. Unfortunately, that is the situation with any defendant or witness or any party to an action. There is anxiety, stress, and time lost from work and family and that is not sufficient to grant a dismissal of the charges.

The trial court's conclusions are supported by the record. The testimony does not show that any of the appellants were inconvenienced any more so than other persons or witnesses awaiting trial.

In addition, the initial prehearing conference was continued to allow the appellants time to obtain counsel. Appellants did not appear in court when their trial was first continued. The second continuance of the trial was required because the appellants filed a notice of removal. Considering the time periods and the reasons for some of the delay, the appellants were not unreasonably prejudiced by the delay. *Cf. State v. Givens*, 356 N.W.2d 58, 62 (Minn.Ct.App. 1984), *pet. for rev. denied* (Minn. Jan. 2, 1985) ("The anxiety suffered from pretrial incarceration is unfortunate, but not a serious allegation of prejudice.").

■ Under the circumstances, the trial court did not err by concluding the appellants were not denied a speedy trial. The length of delay probably was not excessive and some of the delay was caused by the appellants' actions. Although the appellants formally demanded a speedy trial, the record does not indicate that the appellants were unreasonably prejudiced by the delay.

### 2. Probation Condition

Though the trial court may prohibit appellants from entering private property as a condition of their probation, appellants argue that prohibiting them from coming within 500 feet of the clinic unconstitutionally restricts their first amendment right to engage in nonviolent demonstration on a public sidewalk.

■ Where probation conditions restrict fundamental rights, the trial court's exercise of the broad discretion in setting probation conditions is carefully scrutinized. *United States v. Consuelo-Gonzalez*, 521 F.2d 259, 265 (9th Cir.1975). The overriding concern on review of probation conditions is whether the imposed conditions are "reasonably related to the purposes of sentencing, including the goal of rehabilitation, and should not be unduly restrictive of the probationer's liberty or autonomy."

*A.B.A. Standards for Criminal Justice,* Sentencing Alternatives and Procedures Standard 18–2.3(e) (2nd ed. 1980). "Where fundamental rights are involved, special care should be taken to avoid overbroad restrictions or restraints which are so vague or ambiguous as to fail to give real guidance." *Id.* Acceptable probation conditions include "refraining from * * * frequenting specified types of places * * * to the extent that such restrictions have a reasonable relationship to the prior offense or anticipatable future criminal behavior." *Id.* Standard 18–2.3(f)(vii). While such probation conditions may be improper if imposed upon the ordinary citizen, probationers "properly are subject to limitations from which ordinary persons are free." *Consuelo–Gonzalez,* 521 F.2d at 265.

In *United States v. Lowe,* 654 F.2d 562 (9th Cir.1981), the federal court upheld the imposition of a probation condition prohibiting the probationers from coming within 250 feet of the military base where they were arrested while protesting the government's maintenance of the Trident weapons system. The *Lowe* court determined whether the probation conditions were reasonably related to the purposes of the sentencing by considering these three factors:

(1) the purposes sought to be served by probation;

(2) the extent to which constitutional rights enjoyed by law-abiding citizens should be accorded to probationers; and

(3) the legitimate needs of law enforcement.

*Id.* at 567 (citations omitted). We adopt the *Lowe* court's three factor test.

Here, the trial court reasoned:

In a typical trespass-type of a case, that is the typical kind of a sentence that I will give, regardless of the nature of the charges, or the people involved. And it seems to me appropriate that even 500 feet would be allowed. I could say the general neighborhood, which I have done in some cases, "You will not be near this person," for example, "You can't be seen in the neighborhood," or for several blocks around. And in this case, I think 500 feet is quite appropriate.

The court noted that while it required appellants to stay 500 feet away from the clinic where they were arrested, the restriction did not extend "to other similar facilities."

■ The imposition of a 500–foot prohibition from the clinic's premises is reasonable, enforceable and is not so great as to prevent all protest activity. Though the restriction prohibits probationers from approaching within 500 feet of this clinic, the limitation does not prevent probationers from protesting at any other clinics or attending meetings or distributing leaflets. The restriction is reasonably related to the prior offense and tailored to deter future protests by these appellants at this clinic. In addition, when two probationers indicated that their bank and library are within the 500–foot limitation, the trial court stated that an exception could be made for activities in those buildings though probationers would still be prohibited from the general premises of the clinic. Given the alternatives of imprisonment or some other greater restriction upon appellant's movements, speech, and association, the 500–foot limitation is reasonable.

## DECISION

The trial court's conclusion that the appellants were not denied a speedy trial is affirmed. Although the appellants were not tried within sixty days after demanding a speedy trial and the delay was caused in part by administrative problems, the twenty-three day delay probably was not unreasonably long. Part of the delay was caused by the appellants' activities and the record does not show any of the appellants were unreasonably prejudiced by the delay.

The imposition of a 500–foot prohibition from the clinic's premises as a condition of probation is affirmed because this restriction is reasonable and is not unduly restrictive of probationers' liberty.

Affirmed.

NIERENGARTEN, J., dissents.

NIERENGARTEN, Judge, disssenting.

I would reverse. Rule 6.06 states in part:

On demand made in writing or orally on the record * * * the defendant shall be tried within sixty (60) days from the date of the demand unless good cause is shown by the prosecution * * * why he should not be brought to trial within that period.

Minn.R.Crim.P. 6.06.

The first trial date was May 26, 1987. On that date, appellants demanded a speedy trial. The trial was rescheduled for June 22, 1987, because of a busy calendar. On June 22, the appellants demanded removal of the trial judge. There remained twenty-three days, within the sixty day period, during which the case could have been tried.

Instead the trial occurred on August 17, 1987, at which time the appellants moved for dismissal for failure to obtain a speedy trial. By order dated August 20, 1987, the court denied the motion, *finding* that:

1. * * * In the case at hand, it is apparent to the Court that the reason the case was not tried within the 60 days, is because of the Affidavit to Remove, which was filed by the defendant on June 22, 1987.

2. *Given the current state of the court's calendar,* combined with the fact that at this time this Court was also operating with two less judges than its full complement, there exists good cause for denying the above motion.

(emphasis added). However, the record failed to disclose any evidence either (1) of the "state of the court's calendar," or (2) that "operating with two less judges than its full complement" made trial impossible in the next twenty-three days.

On September 3, the appellants again moved the court for an order vacating the judgment and dismissing their case arguing they were denied a speedy trial. Sometime after the September 3 hearing, the appellants' attorney submitted an affidavit of Mark Calvert, the case manager responsible for scheduling criminal jury trials in Ramsey County District Court. The affidavit states:

2. That during the period June 22, 1987 to August 17, 1987, several judges were assigned and available to hear criminal jury trials.

3. That on June 22, 1987, if I had been aware of the Defendants' request for a speedy trial, I would have scheduled the above-captioned case for a jury trial prior to the expiration of the 60-day period which began May 26, 1987.

The affidavit was filed with the court and personally delivered to the trial judge's chambers by the appellants' attorney. Calvert's affidavit is dated September 14; the trial court file indicates the affidavit was filed with the clerk of court on that date. We assume a copy of the affidavit was delivered to the trial court judge on that date.

Eight days after the filing of the Calvert affidavit, the court again denied the motion to dismiss, stating, in part, in its order dated September 22, 1987:

Based upon all the files, records and proceedings * * * the Court makes the following

FINDINGS AND CONCLUSIONS:

1. The chronology of the case is as follows:

\* \* \* \* \* \*

f. Demand for speedy trial under Rule 11.1: May 26, 1987;

g. The second trial date: June 22, 1987, at which time the defendants filed an Affidavit of Removal against the judge scheduled to hear that case. *There were no other judges available that week to hear the case,* and the matter was continued for a third trial date of August 17, 1987.

2. The Sixth Amendment of the United States Constitution, and Article I, Section VI of the Minnesota State Constitution, provide for the right of all defendants in criminal prosecutions to a speedy trial.

\* \* \* \* \* \*

3. The comments to Rule 6.06, as found in the comments to Rule 11.10 of

the Minnesota Rules of Criminal Procedure, provide that:

"The rule does not specify the consequences of failure to bring a defendant to trial within the time limits set by the rule * * * the consequences and the time limit beyond which a defendant is considered to have been denied his constitutional right to a speedy trial are left to judicial decision * * *."

4. The leading United States case regarding the question of speedy trial is *Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182, 33 Lawyer Ed. 2nd 101 (1972), which provides a balancing test in determining whether or not a person has been denied his right to a speedy trial. The factors to be considered are: 1) the length of delay; 2) the reason for the delay; 3) defendant's assertion of this right; 4) any prejudice to the defendant.

5. This Court finds that the length of delay in this case, a total of some 22 days, is not sufficient to find that the defendants were denied a speedy trial. Furthermore, *the reason for the delay, a combination of an over-crowded court calendar, as well as the filing of an Affidavit to Remove the original trial judge in this matter*, was not a sufficient basis to dismiss the charges for denial of a speedy trial.

(emphasis added).

This "finding" flies directly in the teeth of the Calvert affidavit. We recognize that *Barker v. Wingo*, 407 U.S. 514, 530, 92 S.Ct. 2182, 2191, 33 L.Ed.2d 101 (1972) allows the trial court to consider certain factors in determining whether a person has been denied his or her right to a speedy trial and that the sixty-day period provided in Rule 6.06 is "presumptive only." *See State v. Curtis*, 393 N.W.2d 10, 12 (Minn. Ct.App.1986). However, when the record not only does not support the court's findings but, in fact, speaks *against* them, we must concluded that the judicial discretion granted the trial court to determine whether a defendant has been denied his or her constitutional right to a speedy trial has been abused.

I would reverse and require the trial court to dismiss the charges.