STATE of Wisconsin, Plaintiff-Appellant,

v.

Shawn W. STARY, Defendant-Respondent.†

Court of Appeals

*No. 94–1102–CR. Submitted on briefs July 20, 1994.—Decided August 30, 1994.*

(Also reported in 522 N.W.2d 32.)

†Petition to review denied.

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *Rod W. Smeltzer*, assistant district attorney.

On behalf of the defendant-respondent, the cause was submitted on the brief of *John D. Lubarsky*, assistant state public defender.

Before Cane, P.J., LaRocque and Myse, JJ.[1]

CANE P.J.   The State appeals an order suppressing the results of a breath test in this prosecution for the violation of § 346.63(1)(a) and 346.63(1)(b), STATS., operating a motor vehicle while under the influence of an intoxicant and operating a motor vehicle while having a prohibited blood alcohol concentration of .10% or more. The State argues that the trial court erroneously ruled the results of the breath test must be suppressed because law enforcement refused to pay for an alternative blood test requested by Shawn Stary after he was released from custody. Because the arresting officer acted with reasonable diligence in offering an alternate test, which Stary refused, the circumstances of this case do not require the State to provide at its expense an alternate test. We reverse.

The underlying facts are undisputed for purposes of this appeal. On Monday, August 23, 1993, at approximately 6 p.m., Menomonie police officer Rick Hollister

---

[1] This is a three-judge decision pursuant to the chief judge's August 26, 1994, order.

stopped Stary for speeding. After detecting Stary had an odor of alcohol, slurred speech and red and glassy eyes, the officer inquired whether Stary had been drinking, to which he replied that "[h]e had a couple." Based upon his observations of Stary's field sobriety test performance, the officer arrested Stary for OWI.

When they arrived at the sheriff's department, the officer read from the "Informing the Accused" form advising Stary of his rights with respect to an evidentiary breath test. Stary consented, and the officer obtained two breath samples, showing results of .30% and .28%.

The officer advised Stary that he had the right to an alternate blood test at the department's expense upon completion of the department's primary breath test. Stary declined the offer. It is undisputed that the officer offered the alternate test at least four times and Stary declined each time. The officer testified: "I offered him at least four times, and probably more, that we would be more than happy to take him to the hospital and do a blood draw for alcohol and pay for it, and he declined at all times." By reading the "Informing the Accused" form, the officer also indicated to Stary that he was entitled to a test of his own choosing at his own expense.

Stary posted bond and was released from custody at approximately 7:40 p.m. Approximately thirty-five minutes later, the officer was contacted by a nurse from the medical center who stated that Stary was requesting a blood test and whether the police department would be paying for it. The officer replied that the police department would not pay for the test. The officer testified that he did not indicate that Stary was not entitled to a blood test.

The trial court found that "this officer did everything reasonable." Nonetheless, the trial court granted Stary's motion to suppress the breath test results on the basis that law enforcement would not pay for or provide the alternate blood test. The State appeals.

This case requires the interpretation of § 343.305, STATS., a question of law that we review de novo. *State v. Vincent,* 171 Wis. 2d 124, 127, 490 N.W.2d 761, 763 (Ct. App. 1992). Section 343.305(2) requires law enforcement to provide at its expense at least two of the three approved tests to determine the presence of alcohol or other intoxicants in the breath, blood or urine of a suspected intoxicated driver. *Vincent,* 171 Wis. 2d at 127, 490 N.W.2d at 763.[2] Law enforcement may designate one of those two as its primary test.

---

[2] Section 343.305(5)(a), STATS., provides:

(5) **Administering the test; additional tests.** (a) If the person submits to a test under this section, the officer shall direct the administering of the test. A blood test is subject to par. (b). *The person who submits to the test is permitted, upon his or her request, the alternative test provided by the agency under sub. (2) or, at his or her own expense, reasonable opportunity to have any qualified person of his or her own choosing administer a chemical test* for the purpose specified under sub. (2). If the person has not been requested to provide a sample for a test under sub. (3) (a) or (am), the person may request a breath test to be administered by the agency or, at his or her own expense, reasonable opportunity to have any qualified person administer any test specified under sub. (3) (a) or (am). The failure or inability of a person to obtain a test at his or her own expense does not preclude the admission of evidence of the results of any test administered under sub. (3) (a) or (am). If a person requests the agency to administer a breath test and if the agency is unable to perform that test, the person may request the agency to perform a test under sub. (3) (a) or (am) that it is able to perform. The agency shall comply with a request made in accordance with this paragraph. (Emphasis added.)

Once a person consents to the primary test requested by law enforcement, he or she is permitted, at his or her request, an alternate test the agency chooses or, alternatively, a reasonable opportunity to a test of his or her choice. "If for any reason the accused does not want the agency's secondary test, the accused may choose and pay for his or her own test at an approved facility." *Id.* at 128, 490 N.W.2d at 763. Thus, law enforcement must provide a reasonable opportunity for the accused to obtain his or her own alternate test, within the three-hour time limit from the time of the stop. *Id.*

Section 343.305(5), STATS., therefore, imposes three obligations on law enforcement: (1) to provide a primary test at no charge to the suspect; (2) to use reasonable diligence in offering and providing a second alternate test of its choice at no charge to the suspect; and (3) to afford the suspect a reasonable opportunity to obtain a third test, at the suspect's expense.

In *State v. Renard*, 123 Wis. 2d 458, 367 N.W.2d 237 (Ct. App. 1985), a police officer arrested Renard at a hospital that was treating him for injuries sustained in an automobile accident. The officer persuaded Renard to submit to a blood test because the sample could be drawn at the hospital. Renard requested a breath test, but it could not be performed at the hospital. The trial court found that Renard continued to request the breath test although he consented to the blood test. After the blood sample was drawn, the officer left the hospital without inquiring as to the length of Renard's stay. Renard was released shortly after the officer left, which was within two hours of the accident, and the requested breath test was not performed. *Id.* at 460, 367 N.W.2d at 238.

In *Renard,* we sustained the suppression of the initial blood test results and held that the officer failed to comply with § 343.305(5), STATS., because he failed to make a reasonable inquiry concerning the expected time of Renard's release. Because three hours did not elapse between the time of Renard's accident and the release from the hospital, the police could have timely performed the requested second breath test. *Renard,* 123 Wis. 2d at 460, 367 N.W.2d at 238-39; *see* § 885.235(1), STATS. Because Renard requested a secondary test, we held that the officer was required to make a diligent effort to comply. *Id.* at 461, 367 N.W.2d at 238.

Once the suspect has unequivocally refused the second test, however, the officer is not under a continuing obligation to remain available to accommodate future requests. Here, it is undisputed that Stary repeatedly refused the offer of the secondary test. This contrasts with the scenario in *Renard,* where the suspect continually requested the secondary test. Here the record supports the trial court's finding that the officer "did everything reasonable" with respect to offering the second test.

Stary claims that under *Renard,* he had the right to "change his mind" and that his release from custody is immaterial. We disagree. Whether the officer made a reasonably diligent effort to comply with his statutory obligations is an inquiry that must consider the totality of circumstances as they exist in each case. A suspect's release from custody may be relevant in determining whether the suspect unequivocally refused the secondary test. Under the circumstances of this case, where Stary refused the secondary test four times and did not make a request to the officer until after he was released from custody and had arrived at a medical facility, the

271

officer was entitled to conclude that Stary was on his own with respect to obtaining and paying for an alternate test.

In *Vincent,* the accused refused the secondary test offered by the law enforcement agency and insisted on being tested at a different medical facility. Once the secondary test was refused, "[t]he agency's responsibility to provide a 'reasonable opportunity' is limited to *not frustrating* the accused's request for his or her own test." *Id.* at 128, 490 N.W.2d at 763 (emphasis in original). Here, because the officer diligently offered Stary an alternate test that Stary unequivocally refused, law enforcement was under no further obligation to provide or pay for Stary's blood test. At that point law enforcement was only required not to frustrate Stary's attempts to obtain and pay for his own alternate test. Under these circumstances, law enforcement's refusal to pay for Stary's blood tests was reasonable and not a frustration of Stary's attempt to obtain an alternate test.

██

Stary also contends that his request for the blood test was made within three hours of the stop, *see* § 885.235(1), STATS., and that it would not have been administratively burdensome for law enforcement to simply agree to pay for it. These considerations, however relevant, do not control the outcome whether the officer made reasonably diligent efforts in compliance with § 343.305(5), STATS. Because the officer acted with reasonable diligence in offering the secondary test under § 343.305(5) four times, which Stary refused each time, and the officer did not frustrate Stary's attempt to obtain his own alternate test, the breath test results need not be suppressed.

*By the Court.*—Order reversed.